Copies Mailed/Faxed 7-14-17
Chambers of Vincent L. Briccetti  DH

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-14-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TAYDEN TOWNSLEY,                                   :
                          Plaintiff,               :
                                                   :
   v.                                              :      **OPINION AND ORDER**
                                                   :
SUPERINTENDENT WILLIAM A. LEE;                     :      16 CV 3837 (VB)
LIEUTENANT TOKARZ; SGT. NEIL YANDO;                :
C.O. ROBERT SNEDEKER; C.O. WARREN                  :
FREEMAN; C.O. JAMES LAWYER; C.O.                   :
WILLIAM STEVENS; INVESTIGATOR                      :
FRANK ORTIZ; THE ESTATE OF DR.                     :
HERBERT E. GOULDING, in their official and         :
individual capacities,                             :
                          Defendants.              :
------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Tayden Townsley, proceeding pro se and in forma pauperis, brings this action

under 42 U.S.C. § 1983 against defendants Superintendent William A. Lee, Lieutenant Mark A.

Tokarz, Sergeant Neil Yando, corrections officer ("C.O.") Robert Snedeker, C.O. Warren

Freeman, C.O. James Lawyer, C.O. William Stevens, Investigator Frank Ortiz, and the Estate of

Dr. Herbert E. Goulding, alleging defendants used excessive force, failed to protect plaintiff,

conducted an unlawful investigation, and were deliberately indifferent to plaintiff's serious

medical needs in violation of his Eighth and Fourteenth Amendment rights.

    Before the Court is defendants' motion to dismiss the complaint pursuant to Rule

12(b)(6). (Doc. #29).

    For the reasons set forth below, the Rule 12(b)(6) motion to dismiss is GRANTED as to

defendants Lee, Tokarz, and Ortiz; as to defendants Estate of Dr. Goulding, Yando, Snedeker,

Freeman, Lawyer, and Stevens, the motion to dismiss is converted to a motion for summary

judgment, Fed. R. Civ. P. 12(d), 56, and that motion is also GRANTED.

As to defendant Ortiz only, the Court sua sponte grants plaintiff leave to file an amended complaint, as further explained below.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations of the complaint as true, and draws all reasonable inferences in plaintiff's favor. In addition to the facts alleged in the complaint, "[i]n considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider . . . documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

At all relevant times, plaintiff was incarcerated at Green Haven Correctional Facility ("Green Haven").

Accepting plaintiff's allegations as true for purposes of this motion, on March 21, 2013,[1] plaintiff was stopped and searched while at "J-School" (Compl. ¶ 2), a facility at Green Haven containing the law library, inmate organizations and programs, and counseling and physical therapy units. See Jackson v. Goord, 664 F. Supp. 2d 307, 320 (S.D.N.Y. 2009) (describing Green Haven's J-School). Plaintiff had with him a folder containing legal documents. Defendant C.O. Freeman took plaintiff's legal files from another officer who was searching plaintiff, and asked the officer why he was being "so gentle" with plaintiff's belongings. (Compl. ¶ 2). Freeman dumped plaintiff's legal paperwork out of the folder and shoved plaintiff

---

[1] The complaint alleges this incident occurred on March 3, 2013. (See Compl. ¶ 2). Plaintiff's opposition to defendants' motion to dismiss, however, claims the incident took place on March 21, 2013, which date comports with plaintiff's complaint to Superintendent Lee regarding the incident. (See Doc. #37 Ex. A).

toward the wall.  Freeman threatened plaintiff and attempted to provoke plaintiff into fighting him.

Plaintiff filed a written complaint with Superintendent Lee regarding the March 21, 2013, incident with C.O. Freeman.

At the time, plaintiff was the Green Haven inmate liaison committee representative for his housing block.  As an inmate liaison committee representative, plaintiff attended monthly meetings with Green Haven's administrative executive team, which included the superintendent or his designee, all deputy superintendents, and corrections officers of the rank of captain or lieutenant.  At these meetings, plaintiff and the other inmate liaison committee representatives raised the issue of physical assaults and harassment of inmates by corrections officers, particularly incidents occurring in specific parts of the facility and during particular shifts. Plaintiff also encouraged inmates to report any misconduct by filing a grievance or complaint.

Plaintiff claims he witnessed or otherwise became aware of several incidents he reported directly to the superintendent, including claims of harassment by Freeman.  For example, Freeman allegedly took two watches from inmates, and threatened to deprive other inmates of recreation time if they did not relinquish their cigarettes.  Plaintiff feared his filing of complaints against Freeman were the motivation for Freeman's actions on March 21, 2013.  In plaintiff's complaint to Superintendent Lee regarding that incident, plaintiff sought protection from retaliation, threats, harassment, and intimidation resulting from plaintiff's reports of officer misconduct.

On April 24, 2013, defendant Lieutenant Tokarz responded by letter to plaintiff on behalf of Superintendent Lee.  Tokarz informed plaintiff that a letter of complaint was not the appropriate mechanism to address the concerns of other inmates.  Tokarz also memorialized the

actions he had taken in response to plaintiff's complaint. Tokarz said he interviewed plaintiff on April 17, 2013, and subsequently spoke with all staff allegedly involved in the March 21, 2013, incident, each of whom submitted a written statement denying plaintiff's version of events. Tokarz determined there was no evidence to support plaintiff's claims of wrongdoing, and considered the matter to be addressed and resolved.

On March 25, 2013, plaintiff wrote to Brian Fischer, then the Commissioner of the Department of Corrections and Community Supervision ("DOCCS"), regarding the processing of plaintiff's grievances. Karen Bellamy, Director of the Inmate Grievance Program ("IGP"), responded and informed plaintiff that he had not filed a grievance regarding the March 21, 2013, incident. Furthermore, she instructed plaintiff to see an IGP supervisor if he wished to file a grievance because it could not be filed directly through Fischer's office.

On May 6, 2013, plaintiff was allegedly attacked and beaten by corrections officers while attempting to go to his evening program assignment. Plaintiff had been released too late from his housing block to join the group heading to J-School. As a result, plaintiff was told to return to his housing block, but was then authorized by an unnamed C.O. to line up with the neighboring housing block so that he would be able to join his group at J-School. Under the impression that plaintiff had left his housing block without permission, defendant Sergeant Yando isolated plaintiff from the group and ordered him to put his hands on the wall. With plaintiff's hands on the wall, defendant Freeman struck plaintiff on his side. Defendant Lawyer grabbed plaintiff by the waist, and defendants Snedeker and Stevens rushed plaintiff, knocking him to the ground. Plaintiff momentarily lost consciousness, waking up to officers holding him on the ground, and Snedeker jabbing plaintiff along his right side with a baton.

Plaintiff implored the officers to stop and pleaded for help.  Sergeant Yando asked plaintiff why he left his housing block.  The officers finally released plaintiff after forcing him to agree not to take any action regarding the attack.

After returning to his cell, plaintiff was informed that non-defendant C.O. Imperati told Sergeant Yando that plaintiff had not been given permission to leave his housing block.

That night, plaintiff asked for and was denied access to medical care.  Plaintiff went to emergency sick call the next day, May 7, 2013, complaining of severe pain in his leg, ankle, shoulder, and ribs.  Medical staff recorded the following injuries: a chipped front right tooth; sore neck; redness on his hand; and bruising and tenderness of the shoulder, armpit, right thigh, and ankles.  Staff provided plaintiff with ibuprofen for his pain.

Plaintiff informed non-party Lawrence O'Neill, Assistant Deputy Assistant of Programs, of the attack, asked that it be reported, and requested to have photos taken of his injuries.  Photos were taken and plaintiff filed a written complaint with defendant Superintendent Lee after refusing to provide a statement to non-party Sergeant Miller.  Plaintiff described what happened and asked Superintendent Lee to take disciplinary action against the corrections officers involved in the May 6, 2013, attack.

On May 9, 2013, plaintiff returned to sick call and showed his injuries to Superintendent Lee and Assistant Deputy Assistant of Programs O'Neill.  Plaintiff was also seen by medical staff, and photos were again taken.  Medical staff gave plaintiff an ace bandage for his ankle, which appeared more swollen and bruised.  Plaintiff complained of extreme pain in his thigh, ankle, shoulder, and side.  Plaintiff was given more ibuprofen for his pain.

Plaintiff had been placed in keeplock confinement—i.e., administrative segregation—as a result of the May 6, 2013, incident, about which plaintiff complained to Superintendent Lee. Lee told plaintiff someone would be coming to speak with him soon.

Later that day, plaintiff met briefly with Investigator Ortiz from the Inspector General's Office for an interview before agreeing to continue the conversation on another day.

On or about May 10, 2013, plaintiff met with defendant Dr. Goulding, his assigned medical provider, and showed Dr. Goulding his injuries. After telling Dr. Goulding how he received his injuries, plaintiff claims Dr. Goulding became "very hostile and belligerent." (Compl. ¶ 23). Dr. Goulding recorded only some of plaintiff's injuries, refused to document others, and gave plaintiff only ibuprofen for the pain. Dr. Goulding did not perform a full examination, denied plaintiff physical therapy—even though the mobility in plaintiff's right shoulder remained limited for a year—and did not authorize plaintiff's use of an ace bandage. Plaintiff requested an MRI or x-ray of his ribs, but Dr. Goulding denied that request.

Plaintiff submitted a complaint dated May 14, 2013, regarding the medical care he received from Dr. Goulding with Dr. Frederick Bernstein, Green Haven's Medical Director, and Dr. Carl Koenigsmann, DOCCS' Chief Medical Officer. (Pl.'s Decl. Ex. B).

Plaintiff was seen again by Dr. Goulding on May 30, 2013. X-rays of plaintiff's ribs and right ankle were taken at that time. According to a response dated August 13, 2013, from Dr. Bernstein to plaintiff regarding his May 14, 2013, complaint, the x-rays showed no injury. (Pl.'s Decl. Ex. B). Dr. Bernstein's response also indicated Dr. Goulding's care had been appropriate and plaintiff's request for a new medical provider was denied.

On or about May 13, 2013, plaintiff met again with Investigator Ortiz. Throughout the interview, plaintiff felt like Ortiz insinuated plaintiff had fabricated the May 6, 2013, incident.

Ortiz said that C.O. Snedeker's baton had been sent to forensics, but the bruises on plaintiff's leg appeared to be from a broom handle, indicating plaintiff had been attacked by inmates rather than corrections officers.

A family visit interrupted the interview, causing Ortiz to become angry and further question the validity of plaintiff's claims because plaintiff wanted to attend the visit rather than finish the interview. Plaintiff provided Ortiz with a list of witnesses to interview regarding the May 6, 2013, incident, but Ortiz did not speak to any of the witnesses plaintiff identified. Instead, plaintiff claims Ortiz randomly questioned inmates not present during the attack.

On May 16, 2013, plaintiff filed a grievance with the Inmate Grievance Resolution Committee ("IGRC"), using the letter he had sent to Superintendent Lee on the night of May 6, 2013. Non-party Lieutenant Murphy interviewed plaintiff regarding his grievance and, on June 29, 2013, decided to defer investigation to the inquiry already started by Ortiz and the Inspector General's Office.

On July 11, 2013, Superintendent Lee notified plaintiff that an investigation into the matter was ongoing and any necessary action would be taken following the conclusion of the investigation.

## DISCUSSION

I.    Motion to Dismiss Under Rule 12(b)(6) Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678;

Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted).  Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted).  Nor may the Court "invent factual allegations" plaintiff has not pleaded.  Id.

II.    Motion for Summary Judgment Under Rule 56 Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

8

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See id. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted). The "mere existence of a scintilla of evidence in support" of the non-moving party's position is likewise insufficient; "there must be evidence on which the jury could reasonably find" for him. Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which

summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).  In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

III.    Failure to Exhaust

Defendants Estate of Dr. Goulding, Sergeant Yando, C.O. Snedeker, C.O. Freeman, C.O. Lawyer, and C.O. Stevens argue the Court should dismiss the claims against them under Rule 12(b)(6) or, in the alternative, under Rule 56, because plaintiff failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA").  See 42 U.S.C. § 1997e(a) ("No Action shall be brought with respect to prisons under . . . Federal law[] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

Failure to exhaust is an affirmative defense under the PLRA.  Jones v. Bock, 549 U.S. 199, 216 (2007).  "Dismissal under Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint."  Roland v. Smith, 907 F. Supp. 2d 385, 388 (S.D.N.Y. 2012).

For a New York state prisoner to exhaust a claim, he must comply with the rules of New York's IGP with respect to that claim.  The inmate generally must complete three steps: (i) submit a complaint to the clerk of the IGRC within twenty-one days of the alleged incident, (ii) appeal an adverse decision to the superintendent of the facility within seven days of receipt of the IGRC's written response, and (iii) finally, appeal an unfavorable decision by the superintendent to the Central Office Review Committee ("CORC") within seven days after receipt of the superintendent's written response.  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5.

10

An aggrieved inmate may appeal to the next level if he has not received a response within the prescribed time frame for each step of the grievance procedure.  Id. § 701.6(g)(2).

An expedited process exists for grievances alleging harassment by correctional facility staff,[2] which requires the inmate's grievance to be forwarded directly to the superintendent by close of business the same day it is filed.  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.8(a–b). Following the superintendent's review:

> If it is determined that the grievance is a bona fide harassment issue, the superintendent shall: (1) initiate an in-house investigation by higher ranking supervisory personnel into the allegations contained in the grievance; (2) request an investigation by the inspector general's office; or (3) if the superintendent determines that criminal activity may be involved, request an investigation by the New York State Police, Bureau of Criminal Investigation.

Id. § 701.8(d).  The inmate may appeal his grievance to CORC (i) if the superintendent does not respond within twenty-five days, or (ii) within seven calendar days of receiving the superintendent's response.  See id. § 701.8(f–g); see also id. § 701.6(g)(2) (matters not decided within designated time limits "may be appealed to the next step").

Thus, regardless of whether an inmate's grievance concerns allegations of harassment by correctional facility staff, appeal of an unfavorable decision by the superintendent to CORC is required in order to exhaust administrative remedies for purposes of the PLRA.  See Gardner v. Daddezio, 2008 WL 4826025, at *2 (S.D.N.Y. Nov. 5, 2008).[3]

Here, nonexhaustion is not apparent from the face of the complaint.  The complaint alleges, although in a conclusory fashion, plaintiff fully exhausted his administrative remedies, and it contains no allegation, on its face, demonstrating plaintiff failed to do so.  Rather, at most,

---

[2]      "Harassment grievances" are defined as those that "allege employee misconduct meant to annoy, intimidate or harm an inmate."  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.2(e).

[3]      Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

it omits certain allegations that would demonstrate exhaustion.  Accordingly, the Court cannot dismiss the claims against the defendants under Rule 12(b)(6).  See McCoy v. Goord, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003).

Instead, the Court converts defendants' Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment on the limited issue of exhaustion.  Roland v. Smith, 907 F. Supp. 2d at 388.  Rule 12(d) permits a moving party to submit evidence on matters outside the pleadings—here, exhaustion—and requires the Court to give all parties a reasonable opportunity to present relevant evidence.

The Court will address summary judgment with respect to defendant Estate of Dr. Goulding before addressing summary judgment with respect to defendants Yando, Snedeker, Freeman, Lawyer, and Stevens.

A.    Dr. Goulding

Plaintiff claims Dr. Goulding failed to provide him with adequate medical treatment following the alleged May 6, 2013, attack.

Plaintiff submitted a letter dated May 14, 2013, regarding his dissatisfaction with Dr. Goulding's treatment to non-defendant Medical Director Dr. Frederick Bernstein and Chief Medical Officer Dr. Carl J. Koenigsmann.  However, plaintiff never filed a grievance with the IGRC concerning the medical treatment he received from Dr. Goulding, nor did he appeal or otherwise take any further action in response to Dr. Bernstein's August 13, 2013, letter denying plaintiff's request to be seen by a different medical provider.

An informal letter fails to satisfy the exhaustion requirement.  See Marcias v. Zenk, 495 F.3d, 44 (2d Cir. 2007) ("Alert[ing] the prison officials as to the nature of the wrong for which redress is sought does not constitute proper exhaustion.").

Accordingly, because plaintiff failed to follow the three-tiered grievance procedure with respect to his claim challenging the adequacy of his medical care, the Estate of Dr. Goulding is entitled to summary judgment.

B.      Yando, Snedeker, Freeman, Lawyer, and Stevens

Plaintiff alleges defendants Sergeant Yando, C.O. Snedeker, C.O. Freeman, C.O. Lawyer, and C.O. Stevens used excessive force against him in an attack carried out on May 6, 2013, in violation of his Eighth Amendment right to be free from cruel and unusual punishments.

On May 16, 2013, plaintiff filed a grievance regarding the May 6, 2013, attack, which accuses defendants Yando, Snedeker, Freeman, Lawyer, and Stevens of using excessive force against plaintiff.  Defendants argue, however, that because plaintiff had not appealed this grievance through CORC review before filing this lawsuit, he did not exhaust his administrative remedies.  See 42 U.S.C. § 1997e(a).

In response, plaintiff contends his administrative remedies should be deemed exhausted because he received a favorable decision regarding the complaint he filed with Superintendent Lee.  Plaintiff argues that because the Inspector General's Office investigated plaintiff's grievance regarding the May 6, 2013, attack, his failure to appeal to CORC is excused under Abney v. McGinnis, 380 F.3d 663 (2d Cir. 2004).

The Court disagrees.

In Abney v. McGinnis, the plaintiff had filed numerous grievances regarding his medical care, each of which the IGRC and superintendent, as applicable, expressly resolved in favor of the plaintiff by directing plaintiff's medical providers to administer the treatment plaintiff was requesting.  380 F.3d at 666.  The plaintiff's medical providers, however, failed to comply with the IGRC and superintendent's decisions.  Id. at 665–66.  The Abney plaintiff eventually filed a

Section 1983 law suit in federal court.  On appeal from the district court's decision dismissing

the plaintiff's complaint for failure to exhaust administrative remedies, the Second Circuit held

that the plaintiff's failure to appeal his grievances to CORC was justifiable because at that time

the IGP "d[id] not provide a viable mechanism for appealing implementation failures."  380 F.3d

at 669 ("[R]equiring a prisoner who has won his grievance in principle to file another grievance

to win in fact may produce some never-ending cycle of grievances." (quoting Dixon v. Page, 291

F.3d 485, 490 (7th Cir. 2002))).

Administrative remedies may also be deemed unavailable when they are "so opaque that

[they] become[], practically speaking, incapable of use," or prison administrators prevent an

appeal by means of intimidation or misrepresentation.  See Khudan v. Lee, 2016 WL 4735364, at

*5 (S.D.N.Y. Sept. 8, 2016) (citing Ross v. Blake, 136 S. Ct. 1850, 1859–60 (2016)).

Here, however, plaintiff still had remedies available to him.  Superintendent Lee's

response to plaintiff's grievance regarding the May 6, 2013, incident states "[t]his matter is being

investigated by the Office of the Inspector General.  Any action deemed necessary will be

pending the outcome of the investigation."  (Townsley Decl. Ex. B).  As detailed in the

complaint (see Compl. ¶¶ 18-21 and Pl.'s Opp'n Br. 11-12), plaintiff was dissatisfied with

Investigator Ortiz's investigation into the alleged attack.  The very fact of plaintiff's

dissatisfaction with Ortiz's investigation demonstrates plaintiff had not received all of the relief

available to him.  And if plaintiff had not received the relief he requested, he could have

appealed to CORC.

Moreover, in a CORC appeal, plaintiff could have pursued his request that the officers

involved in the attack be disciplined.  See Ruggiero v. Cty. of Orange, 467 F.3d 170, 176–77 (2d

Cir. 2006) (plaintiff sought and received a transfer to escape abusive officers, but failing to

14

exhaust was not excused because plaintiff could have sought punishment for the officers); see also Amador v. Andrews, 655 F.3d 89, 101–02 (2d Cir. 2011) (plaintiff's failure to appeal to CORC after Inspector General Office's investigation into alleged sexual assault was not excused).

Additionally, plaintiff does not allege that anyone prevented him from appealing to CORC, or that he was unaware of how to do so.  See Williams v. Priatno, 829 F.3d 118, 124 (2d Cir. 2016) (quoting Ross v. Blake, 136 S.Ct. at 1859) (administrative remedy deemed unavailable because the "regulatory scheme providing for . . . appeal [was] 'so opaque' and 'so confusing that no reasonable prisoner [could] use it"); Amador v. Andrews, 655 F.3d at 103 (quoting Ruggiero v. Cty. of Orange, 467 F.3d at 178) ("A prisoner may invoke the doctrine of estoppel when 'defendants took affirmative action to prevent him from availing himself of grievance procedures.").  In fact, plaintiff is clearly aware of how to appeal to CORC, having done so on September 27, 2016, with respect to another grievance not relevant to this case.  (See Hale Decl.).

Thus, by failing to appeal to CORC his grievance regarding the May 6, 2013, incident, plaintiff failed to exhaust his administrative remedies.  Accordingly, defendants Yando, Snedeker, Freeman, Lawyer, and Stevens are entitled to summary judgment.

IV.   Failure to Protect Claims Against Superintendent Lee and Lieutenant Tokarz and
      Unlawful Investigation Claim Against Investigator Ortiz

Remaining are plaintiff's Eighth Amendment claims against Superintendent Lee and Lieutenant Tokarz regarding their failure to protect plaintiff from harm, and plaintiff's Fourteenth Amendment claim against Investigator Ortiz challenging the adequacy of his investigation into the May 6, 2013, attack.

A.    Failure to Protect Claim

Plaintiff claims defendants Lee and Tokarz violated his Eighth Amendment rights by failing to protect him from attack by corrections officers.  Defendants argue plaintiff fails to state a claim because he does not allege defendants were personally involved in the alleged Eighth Amendment violations.

The Court agrees.

Plaintiff must allege defendants' personal involvement in the claimed violation of plaintiff's rights.  See Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013).  Furthermore, a defendant may not be held liable under Section 1983 solely because that person employs or supervises a person who violated the plaintiff's rights.  See Ashcroft v. Iqbal, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.").  In other words, a plaintiff bringing a Section 1983 claim "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Id.

A supervisor's personal involvement in an alleged constitutional violation may be established if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[4]

---

[4]    After Ashcroft v. Iqbal, however, district courts within this circuit have been divided as to whether claims alleging personal involvement under the second, fourth, and fifth of these

Here, plaintiff contends that because he wrote Superintendent Lee a letter regarding the

March 21, 2013, incident with C.O. Freeman, which Sergeant Tokarz followed up on, Lee and

Tokarz violated plaintiff's constitutional rights by failing to protect him from the May 6, 2013,

attack.[5]  Specifically, plaintiff's March 21, 2013, letter to Superintendent Lee stated that C.O.

Freeman had harassed plaintiff and other inmates, and "attempt[ed] to provoke a hostile

situation."  (Townsley Decl. Ex. A; Compl. ¶ 4).

Courts in this circuit, however, routinely conclude that alleging a supervisory official

received reports of wrongdoing does not state a claim under Section 1983.  Samuels v. Fischer,

168 F. Supp. 3d 625, 637 (S.D.N.Y. 2016) (collecting cases).

Upon being informed of the alleged March 21, 2013, incident with C.O. Freeman,

Superintendent Lee directed Lieutenant Tokarz to investigate plaintiff's complaint.  In a letter to

plaintiff dated April 24, 2013, Tokarz states that he interviewed plaintiff on April 17, 2013,

regarding his written complaint.  Tokarz further says:

> I informed you that I had discussed your complaint with Sergeant Kaufman and
> Sergeant Mrzyglod as well as Officers Williams, LaRosa, D'Angelico and W.
> Freeman.  All staff have all [sic] provided me with written statements and have
> denied all alleged wrongdoing.  No one could state specifically why you were not

---

factors remain viable.  See Marom v. City of New York, 2016 WL 916424, at *15 (S.D.N.Y.
Mar. 7, 2016) (collecting cases).  The Second Circuit has yet to resolve this dispute.  Id.

[5]      In Farmer v. Brennan, 511 U.S. 825, 833–34 (1994), the Supreme Court recognized that
prison officials have a constitutional duty to protect inmates from harm inflicted by other
inmates.  Plaintiff does not allege, however, that defendants Lee and Tokarz failed to protect
plaintiff from a violent attack at the hands of other inmates.  Rather, plaintiff claims defendants
Lee and Tokarz failed to protect him from attack by other corrections officers.  Accordingly,
liberally construed, plaintiff's claims against defendants Lee and Tokarz are properly analyzed as
excessive force claims.  Regardless, analyzing plaintiff's claims against defendants Lee and
Tokarz as failure to protect claims would lead the Court to the same conclusion—that plaintiff
fails to state a claim—because plaintiff does not allege any facts demonstrating defendants Lee
and Tokarz were deliberately indifferent to a substantial risk of serious harm to plaintiff, which
plaintiff would have to plausibly allege in order to state a failure to protect claim.  See Farmer v.
Brennan, 511 U.S. 825, 828 (1994); Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013).

allowed to proceed to J-School.  We did discuss at length the reasons for many
inmates returning to their housing units that evening.  You requested that I relay
your concerns regarding your pat frisk to the Sergeant for future reference and I
assured you that I would, and I did.

Based upon our conversation regarding the incident, staff reports and the lack of
evidence to support your claims of said wrongdoing, I consider this matter to be
addressed and resolved at this time.

(Townsley Decl. Ex. A; Compl. ¶ 4).

Plaintiff alleges no other facts connecting Superintendent Lee or Lieutenant Tokarz to the

May 6, 2013, attack, much less alleging their personal involvement in any claimed constitutional

violation.  Moreover, Tokarz's April 24, 2013, letter to plaintiff indicates that he, at the direction

of Superintendent Lee, did act in response to plaintiff's complaint regarding the March 21, 2013,

incident with C.O. Freeman, which further undercuts plaintiff's claims against Lee and Tokarz.

Accordingly, plaintiff's claims against defendants Superintendent Lee and Lieutenant

Tokarz are dismissed.

      B.     <u>Unlawful Investigation Claim</u>

Plaintiff also challenges the constitutionality of Investigator Ortiz's inquiry into the May

6, 2013, attack.  Specifically, plaintiff claims Investigator Ortiz's failure to interview witnesses

identified by plaintiff, and his suggestion that plaintiff fabricated his version of events, violated

plaintiff's constitutional rights.

Section 1983 "does not create a federal right or benefit; it simply provides a mechanism

for enforcing a right or benefit established elsewhere." <u>Morris–Hayes v. Board of Educ.</u>, 423

F.3d 153, 159 (2d Cir. 2005) (citing <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 816 (1985)).  To

state a claim under Section 1983, a plaintiff must allege facts demonstrating the conduct

complained of was committed by a person or entity acting under color of state law, and that the

conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution. <u>See</u> <u>Palmieri v. Lynch</u>, 392 F.3d 73, 78 (2d Cir. 2004).

"[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." <u>DeShaney v. Winnebago Soc. Servs.</u>, 489 U.S. 189, 196 (1989). To state a due process claim, plaintiff must plausibly allege "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." <u>Giano v. Selsky</u>, 238 F.3d 223, 225 (2d Cir. 2001). For a state-created liberty interest to be protected, its deprivation must amount to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 483 (1995).

Moreover, "[c]ourts within the Second Circuit have determined 'there is no constitutional right to an investigation by government officials.'" <u>Bernstein v. New York</u>, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (quoting <u>Bal v. City of New York</u>, 1995 WL 46700, at *2 (S.D.N.Y. Feb. 7), <u>aff'd</u>, 99 F.3d 402 (2d Cir. 1995)); <u>see also</u> <u>Longi v. Cty. of Suffolk</u>, 2008 WL 858997, at *6 (E.D.N.Y. Mar. 27, 2008) (same); <u>Nieves v. Gonzalez</u>, 2006 WL 758615, at *4 (W.D.N.Y. Mar. 2, 2006) (same).

Thus, there is no constitutional violation when the government refuses to investigate an alleged constitutional violation, much less when it fails to investigate allegations of wrongdoing in a particular manner or to the satisfaction of the victim. <u>See</u> <u>Torres v. Mazzuca</u>, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("[T]he breadth of any investigation remains in the discretion of the officers conducting the investigation.").

Accordingly, plaintiff fails to state a due process claim against Investigator Ortiz.

In response to defendants' motion to dismiss the complaint, plaintiff also argues that Investigator Ortiz's actions to "prevent discovery" of the May 6, 2013, attack—i.e., failing to interview witnesses and "fabricating" allegations that plaintiff was beaten with a broomstick rather than a C.O.'s baton—support a claim that Investigator Ortiz conspired with defendants Yando, Snedeker, Freeman, Lawyer, and Stevens to conceal the alleged excessive force. (Pl.'s Opp'n at 11). However, "[c]onclusory allegations of a § 1983 conspiracy are insufficient." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (internal quotation marks omitted).

Plaintiff further argues Investigator Ortiz had the obligation to investigate the May 6, 2013, attack in a "non-discriminatory manner." (Pl.'s Opp'n 12). To support this contention, plaintiff simply contends that Investigator Ortiz is white, while plaintiff is black. But plaintiff's "bald assertions of discrimination . . . unsupported by any comments, actions, or examples of similarly-situated individuals outside of [plaintiff's] protected class being treated differently, from which [the Court] could infer that [Ortiz] possessed a discriminatory . . . motive, are implausible and insufficient to survive a motion to dismiss." Jackson v. Cty. of Rockland, 450 F. App'x 15, 19 (2d Cir. 2011) (summary order) (citing Ashcroft v. Iqbal, 556 U.S. at 680–81).

Accordingly, plaintiff fails to state a claim against Investigator Ortiz.

V.    Leave to Amend

A district court ordinarily should not dismiss a pro se complaint for failure to state a claim "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)). A court must grant leave to amend "unless the court can rule out any possibility, however unlikely

it might be, that an amended complaint would succeed in stating a claim." Gomez v. USAA Fed. Sav. Bank, 171 F.3d at 796.

With respect to plaintiff's claims against defendants Estate of Dr. Goulding, Yando, Snedeker, Freeman, Lawyer, and Stevens, as to which plaintiff failed to exhaust his administrative remedies, leave to amend would be futile because plaintiff cannot cure the stated deficiencies. Plaintiff cannot truthfully allege facts sufficient to demonstrate he properly grieved his claims against these defendants.

Similarly, the complaint, liberally construed, does not contain allegations suggesting plaintiff has valid Eighth Amendment claims against defendants Superintendent Lee and Lieutenant Tokarz that he has merely "inadequately or inartfully pleaded" and therefore should "be given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d at 112.

Accordingly, the Court finds granting plaintiff leave to amend any of his claims against defendants Estate of Dr. Goulding, Yando, Snedeker, Freeman, Lawyer, Stevens, Lee, and Tokarz would be futile because the problems with plaintiff's claims are substantive, and supplementary or improved pleading will not cure the deficiencies of the complaint. Cuoco v. Moritsugu, 222 F.3d at 112.

However, in light of plaintiff's pro se status and the early stage of these proceedings, the Courts sua sponte grants plaintiff leave to amend his complaint with respect to his conspiracy and discrimination claims against Investigator Ortiz. In his amended complaint, plaintiff should include all relevant facts he can truthfully allege that support his claims against Investigator Ortiz. To be clear, plaintiff may not attempt to re-plead his claims against any other defendant.

If plaintiff chooses to amend, the deadline to submit his amended complaint containing all of his allegations against Investigator Ortiz is August 25, 2017.

## CONCLUSION

Defendants' motion to dismiss based on Rule 12(b)(6) is GRANTED as to defendants Lee, Tokarz, and Ortiz.  As to defendants Estate of Dr. Goulding, Yando, Snedeker, Freeman, Lawyer, and Stevens, the motion to dismiss is converted to a motion for summary judgment, Fed. R. Civ. P. 12(d), 56, and that motion is also GRANTED.

Plaintiff is granted leave to file an amended complaint as to defendant Ortiz only.

The Clerk is instructed to terminate the motion (Doc. #29).

The Clerk is further instructed to mail a copy of this Opinion and Order to plaintiff.

Plaintiff's amended complaint, if any, shall be filed by August 25, 2017, in accordance with Part V above.  Plaintiff is directed to utilize the Amended Complaint form attached hereto. If plaintiff fails to submit or chooses not to submit an amended complaint by August 25, 2017, the Court will dismiss this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v United States, 369 U.S. 438, 444–45 (1962).

Dated: July 14, 2017
        White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

No. 16 CV 3837

(To be filled out by Clerk's Office)

**AMENDED
COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

## I.   LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a *"Bivens"* action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.   PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name                    Middle Initial                  Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                             State                    Zip Code

## III.   PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name          Last Name              Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                        State                Zip Code

Defendant 2:

First Name          Last Name              Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                        State                Zip Code

Defendant 3:

First Name          Last Name              Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                        State                Zip Code

Defendant 4:

First Name          Last Name              Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                        State                Zip Code

## V.   STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____
_____
_____
_____
_____
_____
_____
_____
_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____
_____
_____
_____
_____
_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____
_____
_____
_____
_____
_____
_____
_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____